**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

KEVIN CLAERHOUT,

      *Plaintiff*,                        CASE NO. 18-12556

*v.*                                 DISTRICT JUDGE THOMAS LUDINGTON
                                 MAGISTRATE JUDGE PATRICIA MORRIS

NEXTEER AUTOMOTIVE
CORPORATION,

      *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTIONS TO DISMISS (R. 5)**

## I.    RECOMMENDATION

    For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss (R. 5) be **DENIED.**

## II.    REPORT

### A.    Introduction

    On August 16, 2018, Plaintiff Kevin Claerhout, through his attorneys, filed a complaint alleging that Defendant violated portions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq*. Plaintiff was employed with Defendant from some time through September 6, 2017. Plaintiff alleges that MetLife is the plan administrator for the relevant ERISA plan. Plaintiff alleges that Defendant, as fiduciary, breached its duty to Plaintiff "by refusing to comply with the directives and conclusions reached by its plan administrator,

1

i.e., MetLife." (R.1 at Page ID.3.) The breach of duty occurred after "MetLife concluded that Plaintiff was entitled to short term disability monetary benefits up to November 28, 2017" yet "Defendant subsequently refused to forward said benefits to Plaintiff for the time period granted by MetLife." (R.1 at PageID.2.) Plaintiff's complaint attaches a letter from MetLife dated February 16, 2018, wherein MetLife states that Plaintiff's claim was "extended through November 28, 2017, and then closed." (R.1 at PageID.7.) The letter also states that "[w]e have determined that we are unable to extend your disability claim as of November 28, 2017. Our information indicates you do not meet the medical requirements as described in the [Short term disability employer's] Plan." (*Id.*) The letter also asks Plaintiff to submit "documentation that would support your disability" "[f]or further consideration of your claim" and the letter indicates that "there is an outstanding overpayment balance on your claim" and asks Plaintiff to contact his employer "regarding your overpayment balance." (*Id.*)

The complaint also attaches a letter from Defendant to Plaintiff's counsel dated March 28, 2018, wherein Defendant states that Defendant "has no unfulfilled short-term disability payment obligations that are owed to your client. Additionally, because Nexteer's plan documents regarding short-term and long-term disability are proprietary documents linked to our collective bargaining agreement (also proprietary in nature), Nexteer will not release the short-term or long-term disability plans to you." (R.1 at PageID.9.) The letter went on to say that "Nexteer will work with MetLife to provide your client, Mr. Claerhout, a retraction of the unfortunate and erroneous benefit notification letter sent February 2018. Same will explain that your client is **not** entitled to any short-term disability benefits after his September 6, 2017 job termination date." (*Id.* (emphasis in original).)

2

Plaintiff seeks damages "in [the] form of short term disability benefits that are past due along with benefits which are currently due along with those due into the future" as well as interest and attorney's fees and costs, citing 29 U.S.C. § 1132(g)(1).

**B.     Motion to Dismiss Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This Circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.– Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other

materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new," did not convert the motion to dismiss into a motion for summary judgment). Accordingly, the court may consider the plan document and notification letters showing the application of plan terms to the instant Plaintiff without converting the motion to a summary judgment motion. *Luckett v. Sprint Communications, Inc.*, No. 3:16—CV-00700, 2017 WL 1856178, at *3, n.1 (W.D. Ky. May 8, 2017) ("In ruling upon [the employer's] motion to dismiss, the Court may consider both the plan documents and [plaintiff's] release agreement" as "part of the pleadings because they are referenced in [plaintiff's] complaint and are central to her claims.").

### C.    Arguments of the parties

Defendant contends that it is entitled to dismissal because the ERISA provision on which Plaintiff's complaint is based does not authorize this action since 29 U.S.C. § 1132(a)(3) only authorizes equitable relief yet Plaintiff seeks damages in the form of short term disability benefits that are past due, currently due, or will be due in the future, as well as interest and attorney fees. (R. 5 at PageID.26-27.) Defendant also argues that it is entitled to dismissal because Nexteer's short term disability plan is not an ERISA plan but instead is a payroll practice plan under 29 C.F.R. §2510.3-1(b)(2). (R. 5 at PageID.27-30.)

Plaintiff responds that MetLife is the plan's short-term disability carrier and that Defendant Nexteer was entrusted to distribute short-term disability benefits granted by MetLife and thus, that Defendant is a fiduciary of certain employee short-term disability plans at issue in this case under ERISA. (R.10 at PageID.44.) Plaintiff notes that this action arises out of Defendant's "failure to pay certain disability benefit amounts [for] which MetLife deemed

Plaintiff eligible." (R.10 at PageID.45.) Plaintiff argues that contrary to Defendant's assertions, Plaintiff's complaint seeks, in part, equitable relief since it seeks "all other legal and equitable relief" in the prayer for relief. (R. 10 at PageID.51.) Plaintiff also contends that a recent United States Supreme Court decision, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), and its progeny have "open[ed] the possibility that compensatory damages [are] recoverable from a fiduciary under § 1132(a)(3)." (R. 10 at PageID.51-52.) Plaintiff also argues that his claim is covered by ERISA although Defendant "has refused to divulge the plan at issue" despite Plaintiff's requests to discover the plan and Plaintiff notes that the employer's characterization of a plan is not controlling. (R. 10 at PageID.52-56.)

Defendant replies that Plaintiff is incorrect and that the section of ERISA relied on by Plaintiff provides only for equitable relief. (R.11 at PageID.86-89.) Defendant also contends that its short-term disability plan is not an ERISA plan and that discovery will not reveal a genuine issue of material fact; thus, dismissal is appropriate. (R.10 at PageID.89-92.)

Attached to Defendant's motion to dismiss are two exhibits: (1) a declaration by Connie Lafferty, the Benefits Director at Nexteer; and (2) one page of the plan addressing long- and short-term disability benefits. In the declaration, Ms. Lafferty states that Nexteer "pays for sickness an accident benefits" and that "Nexteer's short-term disability plan is part of a collective bargaining agreement [CBA] between Nexteer and the United Automobile, Aerospace and Agricultural Implement Workers of America [UAW] Local 699." (R.5 at PageID.34.) Ms. Lafferty also assures that a "true and accurate copy of the portion of Article XVII of the collective bargaining agreement dated December 18, 2015, that addresses disability benefits is attached to this Declaration as Exhibit 1." (R.5 at PageID.34, 36.) Ms. Lafferty also states that

"Nexteer's short-term disability plan is an unfunded plan paid out of the general assets of Nexteer[.]" (R.5 at PageID.34.)

Attached to Plaintiff's response are five exhibits: (1) an e-mail dated March 28, 2018; (2) 401(k) document; (3) MetLife February 16, 2018 correspondence; (4) other MetLife claim correspondence; and (5) an affidavit of Russell Babcock, an attorney of record for Plaintiff.

The e-mail dated March 28, 2018 is from Tamika Frimpong, Legal Director/HR of Nexteer, to attorney Babcock, stating that Nexteer "has no unfulfilled short-term disability payment obligations that are owed to your client" and that "Nexteer will work with MetLife to provide your client, Mr. Claerhout a retraction of the unfortunate and erroneous benefit notification letter sent in February 2018. Same will explain that your client is **not** entitled to any short-term disability benefits after his September 6, 2017 job termination date." (R.10 at PageID.62) (emphasis in original).

The 401(k) document refers to short-term and long-term disability benefits and states that "MetLife is the Nexteer disability provider[,]" it directs the employee to "contact MetLife to file a disability leave of absence" and commits that "MetLife will work with you and your provider to verify eligibility for your disability leave." (R.10 at PageID.63.) The employee is also directed to "contact MetLife and clear through the Nexteer Medical Department on your return to work." (*Id*.)

Plaintiff attaches a letter from MetLife to Plaintiff dated November 15, 2016, wherein MetLife states that "[w]e have determined that we are unable to extend your disability claim as of November 1, 2016" because "[o]ur information indicates you do not meet the medical requirements as described in your Plan." (R.10 at PageID.66.) The letter further explained that

7

"the medical information failed to support that you were unable to perform your occupation beyond October 31, 2016 . . . therefore benefits have been terminated." (*Id*.) This November 15, 2016 letter from MetLife describes the appeal process and indicates that

> if we deny your appeal (in whole or in part), you have the right to bring a civil action under 29 U.S.C. 1132 section 502A of the Employee Retirement Income Security Act (ERISA) of 1974. Your plan, however, may limit the amount of time you have to file this civil action. Refer to your plan document(s) for further information.

(R.10 at PageID.68.)

In a letter dated December 12, 2016, from MetLife to Plaintiff , MetLife states that "we received new information related to your Short Term Disability (STD) claim" and "[a]s a result, we have extended your disability payments through December 12, 2016." (R.10 at PageID.69.) In a letter dated January 19, 2017, from MetLife to Plaintiff, MetLife states that "[w]e have received new information related to your Short Term Disability (STD) claim" and "[a]s a result, we have extended your disability payments through February 3, 2017." (R.10 at PageID.71.)

Another letter dated February 16, 2017, from MetLife to Plaintiff writes that "[w]e have received new information related to your Short Term Disability (STD) claim" and "[a]s a result, we have extended your disability payments through March 10, 2017." (R.10 at PageID.72.)

Yet another letter dated March 17, 2017, from MetLife to Plaintiff indicates that "[w]e have received new information related to your Short Term Disability (STD) claim" and "[a]s a result, we have extended your disability payments through April 21, 2017." (R.10 at PageID.73.)

A letter dated September 8, 2017, from MetLife to Plaintiff states that "[w]e have received new information related to your Short Term Disability (STD) claim" and "[a]s a result, we have extended your disability payments through September 26, 2017." (R.10 at PageID.76.)

However, a letter dated September 13, 2017, from MetLife to Plaintiff states that "[w]e have received new information related to your Short Term Disability (STD) claim under your employer's plan (the Plan)" and "[b]ased on all information in your claim file, we have extended your disability payments through September 5, 2017." (R.10 at PageID.78.) The letter explains that "[t]his is the maximum period for which you are entitled to receive Short Term Disability (STD) under the Plan." (*Id.*)

A letter dated February 16, 2018, from MetLife to Plaintiff states that "[w]e have received new information related to your Short Term Disability (STD) claim under your employer's plan (the Plan)" and "[w]e have determined that we are unable to extend your disability claim as of November 28, 2017. Our information indicates you do not meet the medical requirements as described in the Plan." (R.10 at PageID.64, 81.) The letter also states that "Medical provides a severity of symptoms to preclude you from work from September 5, 2017 through the office visit on November 28, 2017" and that Plaintiff's "claim was extended through November 28, 2017, and then closed." (*Id.*)

Plaintiff's counsel's affidavit, by Russell Babcock, attests that "Defendant has refused a request which has been made for the plan documents leaving my client to rely upon the written representations he received from Defendant's representative, i.e. MetLife" and that "in order to further address Defendant's arguments, my client requires discovery so that the specifics regarding the disability plan and the collective bargaining agreement can be ascertained along with the circumstances surrounding said plan and the administrative file can be ascertained." (R.10 at PageID.83-84.)

### D.     Analysis

### 1. ERISA coverage

"[T]he existence of an ERISA plan is a non-jurisdictional element of Plaintiffs' ERISA

claim." *Daft v. Advest*, 658 F.3d 583, 587 (6th Cir. 2011).

Under ERISA, an employee welfare benefit plan is defined as:

> any plan, fund, or program which has heretofore or is hereafter established or
> maintained by an employer or by an employee organization, or by both, to the
> extent that such plan, fund, or program was established or is maintained for the
> purpose of providing for its participants or their beneficiaries, through the purchase
> of insurance or otherwise benefits in the event of sickness, accident, disability,
> death or unemployment.

29 U.S.C. § 1002(1).

"The existence of an ERISA plan is a question of fact, to be answered in light of all the

surrounding circumstances and facts from the point of view of a reasonable person." *Thompson*

*v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (collecting cases), *cited with*

*approval in Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 478 (6th Cir. 2007). Although a

question of fact, it is one for the court to decide, not the jury. *Moorman v. UnumProvident Corp.*,

464 F.3d 1260, 1266 (11th Cir. 2006).

"[M]ere labeling by a plan sponsor or administrator is not determinative on whether a

plan is governed by ERISA." *Langley*, 502 F.3d at 481 (concluding plan was not an ERISA plan

where company did not treat the plan as an ERISA plan in its filings with the federal government

and where there was no evidence that the company partially funded benefits from a source other

than general assets and finding the fact that "the company used the same notice requirements for

the initial denial of DAP benefits as it did for ERISA governed benefits [of] negligible import

here").[1]

"In general, courts apply a three-part test to determine whether ERISA covers a particular

plan or practice":

> (1) first, does a "safe harbor" exception apply; (2) if not, do "the surrounding circumstances" suggest that "a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits", and (3) has "the employer established or maintained the plan with the intent of providing benefits to its employees."

*Langley*, 502 F.3d at 479 (quoting *Thompson*, 95 F.3d at 434). The burden of proof rests with

the defendants to show that a plan is exempt from any provisions of ERISA. *Daft v. Advest, Inc.*,

658 F.3d 583, 596-97 (6th Cir. 2011); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir.

2016); *Starr v. JCI Data Processing, Inc.*, 757 F. Supp. 390, 394 (D. N.J. 1991).

Under the payroll practice exemption which Defendant contends controls in this case,

employee welfare benefit plans shall not include:

> (1) Payment by an employer of compensation on account of work performed by an employee, including compensation at a rate in excess of the normal rate of compensation on account of performance of duties under other than ordinary circumstances, such as –
>
> (i)  Overtime pay,
> (ii) Shift premiums,
> (iii)   Holiday premiums
> (iv)   Weekend premiums;
>
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for

---

[1] Nor would evidence that Defendant failed to comply with the administrative and reporting requirements under ERISA be determinative as to whether the plan is subject to ERISA. *Brown v. Ampco-Pittsburgh Corp.*, 876 F,2d 546, 550 (6th Cir. 1989).

medical reasons (such as pregnancy, a physical examination or psychiatric treatment); and

(3) Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) perform no duties; for example –

   (i)    Payment of compensation while an employee is on vacation or absent on a holiday, including payment of premiums to induce employees to take vacation at a time favorable to the employer for business reasons,
   (ii)   Payment of compensation to an employee who is absent while on active military duty,
   (iii)  Payment of compensation while an employee is absent for the purpose of serving as a juror or testifying in official proceedings,
   (iv)   Payment of compensation on account of periods of time during which an employee performs little or no productive work while engaged in training (whether or not subsidized in whole or in part by Federal, States or local government funds), and
   (v)    Payment of compensation to an employee who is relieved of duties while on sabbatical leave or while pursuing further education.

29 C.F.R. §2510-3.1(b). Subsection (2) is most relevant here. Under this subsection, courts will consider whether the employer pays a premium for the plan, whether any monies are deducted from employees' pay to cover the cost of the benefit, and whether the practice is maintained by another or is based on a contractual agreement between the employer and employee only. *See, e.g.*, *Hall v. ESIS, Inc.*, No. 04-75050, 2005 WL 2033500, at *5 (E.D. Mich. Aug. 19, 2005); *Cooper v. Broadspire Sers., Inc.*, No. Civ.A. 04-5289, 2005 WL 1712390, at *8-9 (E.D. Pa. July 20, 2005). Courts also focus on the rationale behind the exemption: "participants in a plan funded from the general assets of the employer—as opposed to those funded by a trust—do not face a threat of non-payment of their benefits based on the improper management of the trust; rather, the security of their benefits is based on the financial health of the employer." *Hall*, 2005 WL

12

2033500, at *3. The "normal compensation" language has been interpreted to apply to compensation less than full compensation. *Williams v. Great Dane Trailer Tennessee, Inc.*, 1995 WL 447268, at *2 (W.D. Tenn. Jan. 20, 1995)(collecting cases).

Defendant's argument that its STD plan is a payroll practice plan exempt from ERISA coverage under 29 C.F.R. §2510.3-1(b)(2) relies solely on the fact that benefits are paid out of its general assets. (R. 5 at PageID.27-30.)

The mere fact that benefits are paid out of the general assets of the employer should not be determinative of this threshold issue of ERISA coverage. As one court noted, since "'[a]n employer . . . should not be able to evade the requirements of the statute merely by paying . . . benefits out of general assets[,]' we found that the payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325,1330 (11th Cir. 1998) (internal citation omitted); DOL Adv. Op. 78-18 (finding ERISA coverage where some retirement benefit payments were made in appreciation for past service and to ease financial hardship with an understanding that the benefits could be terminated and did not constitute a pension plan even though the payments were made from general assets of employer where other ERISA requirements satisfied); *accord* DOL Adv. Op. 79-75.

Instead, courts look at the unique facts of each situation to determine ERISA governance. The issue is complicated where, as here, the plan involves an entity outside the employer and employee relationship. In some cases that involve an insurance company having some administrative role, undisputed evidence shows that a disability plan administered by an insurance company meets the payroll practice exemption and justifies a dismissal of any ERISA

13

claim with little analysis. See, e.g., *Schra v. Metropolitan Life Ins. Co.*, No. 13–13650, 2015 WL 806955, at *3 (E.D. Mich. Feb. 26, 2015) (granting motion to dismiss and denying motion to amend where post-hearing brief contained undisputed evidence showing plan qualified to payroll practice exemption); *Steelman v. The Prudential Ins. Co. of America,* No. 2:09–cv–2113, 2009 WL 4884422, at *2 (W.D. Tenn. Dec. 7, 2009) (dismissing ERISA claim against employer where plan funded from general assets and where there was no evidence that employer "represented the plan in such a way that a reasonable employee would conclude the plan was governed by ERISA."); *Raney v. Life Ins. Co. of North America*, No. 08-169, 2008 WL 11344701, at *2 (E.D. Ky July 3, 2008) (finding STD plan was not governed by ERISA where plan was entitled "Salary Continuation Program" and where the plan stated "benefits payable hereunder shall be paid exclusively from the general assets of the Company.").

In the instant case, Defendant provided an affidavit from its Benefits Director wherein she states that "Nexteer's short-term disability plan is an unfunded plan paid out of the general assets of Nexteer[.]" (R.5 at PageID.34.) At least one district court case in our Circuit has found that an affidavit from the employer's manager responsible for administering the STD program was sufficient evidence to conclude that the plan was a payroll practice. *Walker v. Toyota Motor Mfg., Kentucky, Inc.*, No. 07–420, 2008 WL 2725802, at *3-4 (E.D. Ky. July 10, 2008) (granting employer's motion to dismiss where manager stated, in an affidavit, that the program was self-funded from the employer's general assets and that "'[n]o group insurance contract, annuity contract, other insurance contract, trust or any other separate fund is used to fund any salary continuation under the STD program.' He also stated that 'there are no contributions by TMMK employees to fund the STD program—no amounts are withheld from employees' paychecks for

14

this purpose'"). However, the above case differs from the instant case in that the court did not mention any other evidence that conflicted with the statements in the affidavit and there was no other entity which administered the program, such as, an insurance company.

Although Defendant views the instant case as one of those situations where application of the payroll practices exemption should be a foregone conclusion, I find the inquiry is more involved. Since some conflicting, or at least, ambiguity, persists in the instant case, and a third-party insurance company (MetLife) has some administrative role, I therefore find that this case falls into a category of cases where applicability of the payroll practice exemption requires a closer examination of evidence provided by the employer beyond an affidavit of its employee. In the instant case, in addition to the employee affidavit, Defendant proffers a copy of one page of the plan showing the calculations used to determine the amount of short- and long-term disability benefits. (R.5 at PageID.36.)

In another district court case in our Circuit where an insurer acted as an administrator, the court's analysis depended on information beyond an affidavit from an agent of the employer. In *Norberry v. Life Ins. Co. of North America*, No. 3:07–1268, 2008 WL 5170404, at *2-3 (M.D. Tenn. Dec. 10, 2008), the court focused on the agreement between defendant insurer (LINA) and the employer which stated that the "'Employer sponsors a self-funded salary continuance payroll practice (the "Plan") for its employees'" where "LINA acts as a claims consultant for [the employer]" such that the employer "relies on determinations made by LINA regarding whether employees meet the definition of 'disabled' under the terms of the policy." *Id.* at *2. The employer "reserve[d] the final decision with respect to all claims" and "all liability for payment of claims made under the plan rest[ed] with [the employer]." *Id.* at *3. In determining

whether to grant summary judgment for defendant based on the payroll practice exemption, the court relied on: (1) the contractual evidence provided by LINA; (2) the fact that final decision making authority with respect to all claims and all liability rested with the employer; and (3) the fact that plaintiff did not bring forth any evidence contradicting the above findings. The court concluded that the disability plan was a payroll practice exempt from ERISA coverage. *Id.* at *6.

In this case, there is no evidence to respond to any of the salient questions answered and relied upon by the court in *Norberry*.

First, it is unclear which entity, Defendant or MetLife, has the final authority to determine eligibility for benefits. Plaintiff's complaint alleges that MetLife, rather than Defendant, had the authority to "conclude[] that Plaintiff was entitled to short term disability monetary benefits up to November 28, 2017[.]" (R.1 at PageID.2.) Portions of the 401(k) document support this contention. (R.10 at PageID.63) ("MetLife is the Nexteer disability provider" and "MetLife will work with you and your provider to verify eligibility for your disability leave."). On the other hand, the letter from Defendant to Plaintiff's counsel states that "Nexteer will work with MetLife to provide to your client, Mr. Claerhout, a retraction of the unfortunate and erroneous benefit notification letter sent February 2018[,]" implying that Defendant exercised authority over MetLife in concluding eligibility. (R.1 at PageID.9.)

Second, Defendant has not provided a copy of the agreement between it and MetLife, so the Court cannot make the same determination regarding that relationship as the court in *Norberry* was able to do. Thus, the Court cannot determine if MetLife acts merely as a claims consultant that has the ability to make determinations as to whether employees meet the

definition of "disabled" under the terms of the policy but where Defendant also reserves the final

decision-making power or whether MetLife is the final arbiter of eligibility.

Third, the one-page portion of the CBA provided by Defendant does not make any

mention of the source of funds for the disability program. Although Defendant provided an

affidavit of its agent stating the program was self-funded and paid for out of its general assets,

some documentation corroborating the statement would better assist Defendant in meeting its

burden. *Luckett v. Sprint Communications, Inc.*, No. 3:16-CV-00700, 2017 WL 1856178, at *2

(W.D, Ky May 8, 2017) (denying motion to dismiss based on payroll practices exemption where

employer failed to meet burden to show STD plan qualified for exemption "[b]ecause the source

of funds is not apparent from the face of [the employer's] plan").

Nor is it clear which entity, Defendant or MetLife, actually makes the disability payments

to the employees. It is impossible to tell, from this lack of evidence, whether Plaintiff is correct

in averring that "short term monetary benefits were forwarded to Defendant by MetLife for

distribution to the Plaintiff" or whether Defendant pays benefits to its employees and then

MetLife reimburses Defendant for those funds out of a separate fund established for monies that

will be used to reimburse Defendant or whether Defendant and MetLife have established some

other means to accomplish the goal. (R.1 at PageID.2.) This lack of evidence prevents the Court

from determining another important factor in the payroll practices exemption analysis. *Villegas*

*v. The Pep Boys Manny Moe & Jack of California*, 551 F. Supp. 2d 982, 990-91 (C.D. Cal. May

6, 2008) (analyzing U.S. Supreme Court precedent and its progeny holding that creation of a

separate fund to pay employee benefits would trigger ERISA regulation and remove the plan

from the payroll practice exemption and concluding that "it makes sense to have a threshold

requirement that the separate fund in fact make the payments to employees, as opposed to serving as conduit to reimburse for payments actually made by the employer")

Finally, at least one notice Plaintiff received indicated that, if unhappy, Plaintiff could file an ERISA claim, implying that ERISA provided some protection over the STD plan. (R.10 at PageID.68) (November 15, 2016 letter from MetLife stating that "if we deny your appeal (in whole or in part), you have the right to bring a civil action under 29 U.S.C. 1132 section 502A of the Employee Retirement Income Security Act (ERISA) of 1974.")

Under these circumstances, I suggest that Defendant has not met its burden to establish its entitlement to the payroll practice exemption and that its motion to dismiss should be denied.

## 2. Damages

Plaintiff's complaint seeks damages "in [the] form of short term disability benefits that are past due along with benefits which are currently due along with those due into the future" as well as interest and attorney's fees and costs, citing 29 U.S.C. § 1132(g)(1). (R.1.) Defendant contends that it is entitled to dismissal because the ERISA provision on which Plaintiff's complaint is based does not authorize this action since § 1132(a)(3) only authorizes equitable relief yet Plaintiff seeks damages in the form of short term disability benefits that are past due, currently due, or will be due in the future, as well as interest and attorney fees. (R. 5 at PageID.26-27.) Plaintiff argues that contrary to Defendant's assertions, Plaintiff's complaint seeks, in part, equitable relief since it seeks "all other legal and equitable relief" in the prayer for relief. (R. 10 at PageID.51.) Plaintiff also contends that a recent United States Supreme Court decision, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), and its progeny have "open[ed] the

possibility that compensatory damages [are] recoverable from a fiduciary under § 1132(a)(3)." (R. 10 at PageID.51-52.)

ERISA provides that a civil action may be brought by a participant to enjoin any act or practice which violates ERISA or the terms of the plan, to obtain other appropriate equitable relief to redress such violations, or to enforce any provisions of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). The Supreme Court has recognized the possibility of an equitable remedy, such as surcharge, under ERISA for breaches of fiduciary obligations by plan administrators. *Cigna Corp. v. Amara,* 563 U.S. 421 (2011) (award of make-whole relief in the form of surcharge is within the scope of "appropriate equitable relief" for purposes of § 1132(a)(3)); *Silva v. Metropolitan Life Ins. Co.,* 762 F.3d 711, 722 (8th Cir. 2014).

As noted in a recent district court opinion, the law has been somewhat unsettled as to what extent "appropriate equitable relief" can include compensatory damages such as Plaintiff seek. *See Van Loo v. Cajun Operating Co.,* 264 F. Supp. 3d 1007, 1024-26 (E.D. Mich. 2014). Citing *Amara* and cases since *Amara,* the *Van Loo* court found that if the plaintiff could establish that the defendant breached a fiduciary duty by misrepresentation, then the plaintiff could recover compensatory damages for that breach under 29 U.S.C. § 1132(a)(3).

In *Teisman v. United of Omaha Life Ins. Co.,* 908 F.Supp.2d 875, 880 (W.D. Mich. 2012), the court, citing *Amara,* found that when a fiduciary is involved, compensatory relief is a "typical equitable remedy" available under 29 U.S.C. § 1132(a)(3). The *Teisman* court found, therefore, that ERISA authorized the make-whole equitable relief sought by the plaintiff in that case. *Id.*

Accordingly, I suggest that Defendant's motion to dismiss should be denied on this ground as well.

### E.     Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's motion to dismiss be **DENIED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Caldwell v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

20

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 20, 2019                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 20, 2019                    By s/Kristen Castaneda
                                           Case Manager